AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri


**NO KNOCK**

In the Matter of the Search of

THE PREMISES LOCATED AT: 319 GOETZ AVENUE, ST. LOUIS, MISSOURI, 63125, 2ND FLOOR UNIT AND BASEMENT, AS FURTHER DESCRIBED AND DEPICTED IN ATTACHMENT A.

Case No. 4:21 MJ 6096 PLC

SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, Aaron Ackland, FBI, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the   EASTERN   District of   MISSOURI  , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a); | Distribution and possession of a controlled substance with intent to distribute; |
| 21 U.S.C. § 856 | Maintaining a drug-involved premises |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

*Applicant's signature*

Aaron Ackland
Special Agent, Federal Bureau of Investigation
*Printed name and title*

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: April 30, 2021

*Patricia L. Cohen*
*Judge's signature*

City and state: St. Louis, MO

Honorable Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*

AUSA:  C. Ryan Finlen #6305918(IL)

## ATTACHMENT A

The property to be searched is **319 GOETZ AVENUE, ST. LOUIS, MISSOURI 63125 to include only the second floor unit and the basement including common hallways, stairwells, crawlspaces, closets, and any lock boxes, storage bins, storage boxes, and safes, contained within**, hereinafter referred to as the **Subject Property**, within the Eastern District of Missouri. The property is more fully described as follows: a two-story residence divided into separate units with one unit contained on the first floor and the second unit contained on the first floor as well as a basement accessible by a common stairwell. The **Subject Property** is situated on the north side of Goetz Avenue, west of Gentry Avenue. The residence is comprised of beige siding and brick, and an asphalt shingled roof. A single lane driveway runs along the side of the house. The front door to the residence consists of a glass storm door, with a wooden interior door, which situate facing Goetz Avenue. The numbers "319" are affixed horizontally to the lower left of the front door, above the cement steps leading to the entrance. The **Subject Property** is depicted in the photograph below:



## ATTACHMENT B

Property to be seized

1. Controlled substances;

2. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

3. Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

4. Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; computers capable of e-mail and/or digital communication; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

5. Photographs, in particular photographs of co-conspirators, assets and/or controlled substances;

6. United States currency and other financial instruments and documents or items reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are themselves proceeds from the distribution of controlled substances;

7. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

8. Documents relating to travel;

9. Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys; and

10. Firearms and/or weapons.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT: **319 GOETZ AVENUE, ST. LOUIS, MISSOURI, 63125, 2ND FLOOR UNIT AND BASEMENT, AS FURTHER DESCRIBED AND DEPICTED IN ATTACHMENT A.** | No. 4:21 MJ 6096 PLC<br><br>FILED UNDER SEAL<br><br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A NO-KNOCK SEARCH WARRANT**

I, Aaron Ackland, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as **319 GOETZ AVENUE, ST. LOUIS, MISSOURI 63125 to include only the second floor unit and basement, including common hallways, stairwells, crawlspaces, closets, and any lock boxes, storage bins, storage boxes, and safes, contained within** (hereinafter the "Subject Property") further described in Attachment A, for the things described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been employed with the FBI since April 2004, and have been assigned to the St. Louis Field Division, Safe Streets Task Force since July, 2011. In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act. I have received specialized training in the enforcement of federal controlled substance laws, and I have been involved in all aspects of drug trafficking investigations, including (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution

and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. I have also received training and participated in investigations involving the interception of both wire communications and electronic communications involving digital display paging devices. Finally, I have testified in grand jury proceedings for violations of federal controlled substance laws. Based on my training and experience as an FBI Special Agent, I am familiar with the ways in which drug dealers conduct their drug-related business, including, but not limited to, their methods of importing and distributing drugs; their use of telephones and digital display paging devices, and their use of numerical codes and code words to identify themselves, the nature of the communication and/or to conduct their transactions; and their concealment of drug proceeds in real and personal property as well as legitimate businesses.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) (distribution and possession of a controlled substance with intent to distribute), and Title 21 United States Code, Section 856 (maintaining a drug-involved premises) (hereinafter collectively referred to as the "**Subject Offenses**"), among other offenses, have been committed by **Eric J. FERGUSON** (hereinafter referred to as **"FERGUSON"**), **Joseph C. GAMACHE** (hereinafter referred to as "**GAMACHE**"), and other unknown persons.

5.     There is also probable cause to search the location described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED

6.     The location to be searched is:

**319 GOETZ AVENUE, ST. LOUIS, MISSOURI 63125 to include only the second floor unit and basement including common hallways, stairwells, crawlspaces, closets, and any lock boxes, storage bins, storage boxes, and safes, contained within**, hereinafter referred to as the **Subject Property**, within the Eastern District of Missouri, which is further depicted and described in Attachment A.

## PROBABLE CAUSE

7.     The primary Subjects of this investigation discussed herein are further described as follows:

   a. **Joseph C. GAMACHE** is a male, born on September 3, 1982. As described herein **GAMACHE** conducts methamphetamine sales at the **Subject Property**. **GAMACHE** has a felony conviction, further described as follows: On August 23, 2011, **GAMACHE** was arrested for Assault 1st Degree, which resulted in a May 10, 2012, sentence of 5 years confinement in St. Louis County, Missouri. Although the imposition of that sentence was initial suspended, **GAMACHE's** probation was revoked as recently at February 18, 2016, and the St. Louis County Court sentenced **GAMACHE** to serve the 5 years.

b. **Eric J. FERGUSON** is a male, born on October 26, 1990. As described herein **FERGUSON** conducts methamphetamine sales at the **Subject Property**. **FERGUSON** has several felony convictions, detailed as follows: On December 13, 2009, **FERGUSON** was arrested for Distribution, Delivery, Manufacture of a Controlled Substance, which resulted in a July 25, 2013, sentence of 7 years confinement (suspended execution of sentence). However, on September 22, 2017, that term of probation was revoked and the St. Louis County Court sentenced **FERGUSON** to serve the 7-year term of imprisonment. On May 29, 2010, **FERGUSON** was arrested for Possession of a Controlled Substance, which resulted in an April 18, 2013, sentence of 7 years confinement (suspended execution of sentence concurrent with the charges stemming from his December 12, 2009, arrest). This term of probation was subsequently revoked on September 22, 2017, as well. On December 2, 2011, **FERGUSON** was arrested for Trafficking in Drugs in the 2nd Degree. Although the St. Louis County Court sentenced **FERGUSON** to a 7-year term of imprisonment (suspended execution of sentence) on October 25, 2012, the St. Louis Count Court subsequently ordered **FERGUSON** to serve those 7 years on April 18, 2013. **FERGUSON** was charged in Jefferson County for a July 2016 Possession of a Controlled Substance and Possession of a Firearm. That case resulted in a May 30, 2017, conviction and sentence of 7 years confinement (not suspended).

In April 2021, members of the St. Louis County Police Department (SLCPD) and Federal Bureau of Investigation (FBI) debriefed a long-term, reliable confidential source, hereinafter CS[1], who advised that both **FERGUSON** and **GAMACHE** were residing at the **Subject Property**, and distributing methamphetamine from the **Subject Property**. Specifically, **FERGUSON** resides in the basement area of the **Subject Property**, and **GAMACHE** resides in the second-floor unit of the **Subject Property**.

8.    The **Subject Property** is within a residential structure serviced under two separate utility accounts, both in the same account holder's name.

## Controlled Purchase #1

9.    During the week of April 26, 2021, acting on the above-described information, and at the direction of SLCPD and FBI, the CS was able to contact **GAMACHE** via a recorded telephone call. During the call, **GAMACHE** advised he (**GAMACHE**) and **FERGSUON** were at the **Subject Property** and confirmed the CS could come to the **Subject Property** to get a "quarter." Based on my training and experience, the term, "quarter," as used here means a one-quarter ounce quantity of methamphetamine.

---

[1]    The CS has operated sporadically, but long-term, and has been proven reliable through independently corroborated information, some of which was verified through physical surveillance and recordings.  Information provided by the CS has been utilized in multiple state search warrants in unrelated investigations, which resulted in the seizure of firearms and narcotics, and the securement of local charges. Law enforcement have used the CS in at least three other controlled purchases in addition to the two controlled purchases detailed herein. Law enforcement agents working with the CS are not aware of instances where the CS provided untruthful information. The CS is working with the investigative team in exchange for monetary compensation.

10. Immediately following the call, the CS traveled to the **Subject Property** equipped with an audio and video recording device. Law enforcement searched the CS prior to his arrival at the **Subject Property** and determined that the CS was not in possession of any contraband.

11. Investigators, including your affiant, monitored the controlled-buy via an audio/video transmitter and recorded the transaction via an audio/video recorder. While the CS was at the **Subject Property**, other law enforcement agents conducting surveillance observed **FERGUSON** and **GAMACHE** at the **Subject Property** and informed me that they observed the two subjects. The CS and **FERGUSON** and **GAMACHE** met in the basement of the **Subject Property**. During the CS's interaction with **FERGUSON** and **GAMACHE**, law enforcement agents monitoring the audio/video transmission, including your affiant, observed the CS provide **FERGUSON** and **GAMACHE** with $140 in government funds in exchange for what appeared to be methamphetamine.

12. After the exchange, the CS returned to meet with law enforcement agents, including your affiant, at a predetermined location. Your affiant searched the CS again. None of the $140 in government funds were recovered, but the CS provided the investigators with the suspected methamphetamine distributed by **FERGUSON** and **GAMACHE.** A field test of the drugs indicated the presence of methamphetamine. The methamphetamine weighed approximately 7.3 grams.

### Controlled Purchase #2

13. During the week of April 26, 2021, at the direction of SLCPD and FBI, the CS was able to make a purchase of approximately 7.9 grams of methamphetamine from **FERGUSON** and **GAMACHE** for a price of $140 in government funds. Your affiant, along with other law

enforcement officers, searched the CS prior to his arrival at the **Subject Property** and determined that the CS was not in possession of any contraband.

14. Investigators, including your affiant, monitored the controlled-buy via an audio/video transmitter and recorded the transaction via an audio/video recorder. While monitored by law enforcement agents conducting surveillance, the CS initially met with **GAMACHE** in the second-floor unit of the residence located at the **Subject Property** to discuss the pending purchase. During a debrief, the CS informed law enforcement agents, including your affiant, that the CS observed a handgun on the dresser inside the bedroom. Law enforcement agents, including your affiant, reviewed the video recording confirmed that an object consistent in size, color, and shape with the handgun (described by the CS) appeared to be present while the CS spoke with **GAMACHE** in the second-floor unit.

15. Later during the conversation between **GAMACHE** and the CS, **FERGUSON** arrived at the **Subject Property**, at which time all three individuals went into the basement area of the **Subject Property**. The CS later reported that, once in the basement area, the CS observed an AR-style assault rifle and a .22 caliber handgun to be present. After a brief exchange between the CS and **FERGUSON**, **FERGSUON** accessed a safe contained within the basement. Law enforcement agents monitoring the video equipment worn by the CS confirmed that **FERGUSON** accessed a black digital safe that was approximately 18 inches by 18 inches by 18 inches in size during his interaction with the CS. After opening the black digital safe, the video depicted **FERGUSON** removing a quantity of methamphetamine from a larger bag. Law enforcement agents, including your affiant, observed the CS provide **FERGUSON** with $140 in government

funds. Thereafter, law enforcement agents monitoring the video observed **FERGUSON** provide the CS with a clear Ziploc bag of suspected methamphetamine.

16. The CS returned to meet with law enforcement agents at a predetermined location. Your affiant again searched the CS for contraband. None of the $140 in government funds were recovered, but the CS provided agents with a plastic baggie containing the suspected methamphetamine distributed at the **Subject Property.** A field test indicated the presence of methamphetamine in the crystalline substance. The methamphetamine weighed approximately 7.9 grams.

17. The aforementioned facts support probable cause to believe that **FERGUSON** and **GAMACHE** are committing the Subject Offenses from the **Subject Property**. As discussed above, investigators (including the undersigned affiant) monitored through audio and visual surveillance two controlled buys which occurred in the **Subject Property**. In both buys, **FERGUSON** and/or **GAMACHE** were given government funds in exchange for methamphetamine.

18. Additionally, in my training and experience, it is common for those engaging in drug trafficking crimes to keep drugs, contraband, drug proceeds, and various records, including but not limited to financial records, related to their drug transactions in their premises/residences.

## REQUEST FOR NO-KNOCK AUTHORITY

19. I specifically request the Court authorize the executing law enforcement officers to forego the requirement to "knock-and-announce" their presence prior to entering the **Subject Property**.

20. It is my understanding that a no-knock warrant can be authorized if there is a reasonable suspicion that knocking and announcing an officer's presence would threaten officer safety, be futile, or otherwise inhibit the investigation of a crime.

21. Based on the facts and circumstances discussed in this affidavit, among other things, knocking and announcing an officer's presence prior to entering the **Subject Property** poses a significant threat to officer safety and is likely to inhibit the investigation of the drug distribution crimes included among the **Subject Offenses**. Investigators believe there is a substantial likelihood of a violent confrontation should the search warrant team be required to knock and announce their presence at the time the search warrant is executed.

22. Relying on my training and experience, drug distribution investigations in particular, such as the one discussed in this Affidavit, frequently pose significant threats to officer safety. For example, during previous debriefs of the CS, and during one of the aforementioned controlled drug purchases, the CS observed both **FERGUSON** and **GAMACHE** to be within arms-reach of firearms, to include both handguns and assault rifles, inside the **Subject Property**. Furthermore, during one of the aforementioned controlled drug purchases, the CS observed the **Subject Property** to house multiple video monitors which monitored multiple cameras viewing the exterior of the **Subject Property**. **GAMACHE** has a prior conviction for Assault 1st Degree, and **FERGUSON** has a prior conviction for Possession of a Firearm. For the safety of the Officers executing this search warrant, it is requested this warrant be a "no knock warrant."

23. Based on my training and experience, the facts and circumstances set forth in this Affidavit, including **GAMACHE's** conviction for Assault 1st Degree, **FERGUSON's** 2017 conviction for unlawful possession of a firearm, and the presence of video surveillance equipment,

9

I believe it is highly likely that **GAMACHE** and/or **FERGUSON**, and potentially others within the **Subject Property** at the time the search warrant is executed, would be able to confirm the presence of law enforcement at their door via the surveillance equipment and provide an opportunity to arm themselves, creating a significant risk of death or serious physical injury to any occupant of the **Subject Property**, or to a member of the search warrant team.

24.     I believe the totality of the investigation creates a substantial likelihood that the further investigation of the **Subject Offenses** would be significantly inhibited and/or of a violent confrontation should the search warrant team be required to knock and announce their presence at the time of the execution of the warrant. For these reasons, I request the Court authorize the search warrant team to enter the **Subject Property** without first knocking an announcing their presence

## CONCLUSION

25.     Based on the foregoing I submit that this affidavit supports probable cause for a warrant to search the Premises described in Attachment A and seize the items described in Attachment B.

**[THIS PORTION INTENTIONALLY LEFT BLANK]**

26.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I state under the penalty of perjury that the foregoing is true and correct.

\_\_\_04/30/2021_____            _____
DATE                                    Aaron Ackland
                                        Special Agent
                                        Federal Bureau of Investigation

Sworn to, attested to, and affirmed before me via reliable electronic means Pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on April 30, 2021.

*Patricia L. Cohen*
_____
HONORABLE PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is **319 GOETZ AVENUE, ST. LOUIS, MISSOURI 63125 to include only the second floor unit and the basement including common hallways, stairwells, crawlspaces, closets, and any lock boxes, storage bins, storage boxes, and safes, contained within**, hereinafter referred to as the **Subject Property**, within the Eastern District of Missouri. The property is more fully described as follows: a two-story residence divided into separate units with one unit contained on the first floor and the second unit contained on the first floor as well as a basement accessible by a common stairwell. The **Subject Property** is situated on the north side of Goetz Avenue, west of Gentry Avenue. The residence is comprised of beige siding and brick, and an asphalt shingled roof. A single lane driveway runs along the side of the house. The front door to the residence consists of a glass storm door, with a wooden interior door, which situate facing Goetz Avenue. The numbers "319" are affixed horizontally to the lower left of the front door, above the cement steps leading to the entrance. The **Subject Property** is depicted in the photograph below:

## ATTACHMENT B

Property to be seized

1. Controlled substances;

2. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

3. Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

4. Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; computers capable of e-mail and/or digital communication; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

5. Photographs, in particular photographs of co-conspirators, assets and/or controlled substances;

6. United States currency and other financial instruments and documents or items reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are themselves proceeds from the distribution of controlled substances;

7. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

8. Documents relating to travel;

9. Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys; and

10. Firearms and/or weapons.